Good morning, Your Honor. It's Derek Anderson on behalf of the appellant. If it pleases the court, we appreciate the court's order with respect to the Arbuckle case because we believe it's directly on point regarding the preclusion analysis. In this case, because the district court's reasoning would produce sweeping consequences that the California legislature could not have intended with respect to the California Whistleblower Protection Act to the extent that the district court's reasoning would deny the appellant the procedural guarantees and independent fact-finding hearing and the opportunity to obtain an independent remedy of damages under that statute. Although we believe the SPB's findings were favorable with respect to my client, Arbuckle stands for the proposition that even if the findings were unfavorable to the appellant, he would still have standing to bring his claim in civil court. Arbuckle makes this point clear by pointing out the statutory intent of the California Whistleblower Protection Act, and specifically government code section 8547.8 subsection C, that parties like appellants should not be denied the procedural guarantees and independent fact-finding the statute provides, nor should they be denied the opportunity to bring an independent remedy and an action for damages that are contrary to the statute. Since that would not serve the statute's purpose of reporting wrongdoing without the fear of retribution. Is it like Arbuckle? We love Arbuckle. The reason that we issued the order was it looked to us like it was a pretty significant controlling authority. I don't know that you need to spend a lot of time on it. I'd like to hear what the state's response is. But it seemed to me also, in support of your argument, that the administrative law judge never really addressed the retaliation aspects in the decision. And since, as you point out, the decision was basically generally favorable to Mr. Wabach, it sort of double-barrels the case as far as I can see. Absolutely, Your Honor. And that's underscored by the 49-page opinion the administrative law judge issued. It was extremely thorough. There were, I believe, 67 findings of fact. There were eight separate issues determined. And at the end of the day, retaliation is not discussed once in that 49-page opinion or those 67 findings of fact or those eight issues. And in fact, the end result of the hearing before the SPB was that the administrative law judge threw out all of the charges that were disputed by the appellant, including charges that he was a racist, that he was dishonest, that he had retaliated against fellow correctional officers, that he engaged in sex play with inmates. All of those things were thrown out. At the end of the day, the only charges that were sustained, in fact, were charges that he did not dispute. Minor charges involving taking a silly picture, using a state vehicle to take a picture of a home he considered buying, taking a colleague to look at a trailer, and bringing a movie into his prison camp that he actually intended to use for training purposes. And the fact that those were the only charges sustained and that he did not dispute them clearly shows that the judge was not taking an approach against his retaliation claim, but instead actually supported it by the ruling that he ultimately issued. So is his status now, he's been restored to his position as a correctional lieutenant, but he's had to suffer a 5% reduction in salary for a year. That was the ultimate penalty that was levied. He has been restored. He's now retired on an industrial disability, and he's no longer working for the Department of Corrections, but he did retire in good standing as a peace officer, and that's where he's at today. Now, further underscoring our position, leading up to the actual administrative hearing, the executive officer of the SPB dismissed the whistleblower retaliation complaint that was brought to her attention. And what's further significant about that is not only did she dismiss it, but at the time that complaint was submitted, I've been his counsel throughout all of these proceedings. I actually requested that the SPB may want to consolidate his whistleblower claims along with the disciplinary hearing. And instead of doing that, what the executive officer did is she dismissed the whistleblower claim and denied the opportunity to consolidate those claims. And therefore, SPB divested itself of jurisdiction, and it's an absolute stretch to think that somehow, the SPB somehow reacquired jurisdiction simply by my client raising retaliation. So your position is that that constitutes exhaustion of his administrative remedies since no appeal to the Superior Court was taken by either side of that dismissal? That's absolutely correct. And that comports with the statute that says once you've done that, you've taken care of all of the prerequisites to filing suit for retaliation? Absolutely, Your Honor. And that's exactly what ARBUCLE stands for, that the only thing contemplated by the statute, and again specifically 8547.8 subsection C, is that the person bringing that claim has to exhaust their administrative remedy. The executive officer of SPB clearly indicated in her letter that your administrative remedy is exhausted. You now have standing to bring a claim for damages in Superior Court. Now, moving forward, even after she did that, at the actual disciplinary hearing, if the whistleblower retaliation claim had been at issue, the individually named defendants would have also had the right to their own counsel to defend themselves. And the fact that they didn't shows that the whistleblower retaliation claims were not at issue. And that right is codified in the regulations, and that's Title II California Code of Regulations sections 67.1 through 67.8. And as I mentioned, even if SPB had jurisdiction, the record is clear that the ALJ was hostile to the defense of retaliation based upon the fact that he sustained a relevance objection when I tried to bring it up. So what do we have to go through all this for? You've got the case that's important that no one seemed to be aware of, even though it's been on the books for three years. Absolutely, Your Honor. And Judge Tolman is the one that found it. And we are greatly appreciative that the court— Well, actually, my law clerks found it, but I'll take credit for it.  Because we think the case is directly on point, and I'm sorry if I'm beating a dead horse. I think you are. Maybe you might want to save the rest of your time and let's hear from the state. That's what we'll do. We'll reserve it. Thank you, Your Honor. You're good at following hints. All right. Thank you. Do you represent the state? I do. I'm Mark Shriver. I'm a Deputy Attorney General with the Department of Justice of the State of California. I represent the State of California. The holding in Arbuckle does not apply to the instant proceedings for the reasons stated on page one of appellant's opening brief. He frames the issue as whether the district court erred when it ruled that collateral estoppel applied to the State Personnel Board findings from Wobbekin's appeal of the discipline imposed on him. But Arbuckle says there is no collateral estoppel based on administrative proceedings where the claimant has exhausted his remedy. And the only thing, as I read that case, that is required for exhaustion is exactly what happened here, that the State Personnel Board dismissed the claim, and 30 days later when no petition for writ of mandate was filed, the decision of the agency became final, and that's all that's required before he then can bring a lawsuit. Am I misunderstanding the law? No, you understand the law. But what is missing in your analysis is the italicized reference on page one of the Arbuckle opinion to what does not have preclusive effect. And what does not have preclusive effect, it's actually page 968, but I'll call it the first page of Arbuckle. On 968, what does not have preclusive effect is when the board issues or failed to issue, and these are the key words, findings pursuant to section 19683, and that's of the California Government Code. But if the board dismisses the complaint, there will never be any finding. It's tantamount to saying we don't think you've even established a prima facie case here. So how can that be an adjudication on the merits of the claim if the board never examines an issue's finding? And it's not, and it was not relied on by the district court. The district court took collateral estoppel or issue preclusion from proceedings under 19582 of the Government Code. But was this case Arbuckle brought to the district court's attention? Did the district court have an opportunity to analyze the collateral estoppel issue under the rationale of this case? No, and the reason is that, again, collateral estoppel didn't come from a proceeding under 19683, which is the only thing to which Arbuckle applies. It came from a disciplinary proceeding under a different code section, under 19582. Had Wabakan stopped after he received his dismissal from his 19683 under the Whistleblower Act, had he stopped at that point, filed his district court complaint, and proceeded to litigate it, there would have been no issue preclusion or raised judicata bar. But he didn't do that. He pursued an alternative remedy, and when he did that, he took himself out of Arbuckle for collateral estoppel purposes. He appealed his discipline under 19575 of the Government Code, and he had an appeal of his disciplinary action under 19682. And so when he does that... Let me ask you this. When did you first become aware of Arbuckle? Oh, I was aware of it at the time of this case. That's why we didn't cite in any of our pleadings, in our summary judgment before the district court, to the adjudication or the finding of the SPB on the whistleblower complaint. Well, there is no... You called Arbuckle... See, that's a wonderful name, Arbuckle. You know that name? Well, I remember Fatty Arbuckle here in California, yes. So I'm just wondering what he would think of a case referring to his name, one like this. But anyway, was the district court aware of Arbuckle? Oh, I would think they were, but... I'm not asking you what you think. We didn't bring it to their attention because... Why didn't you bring it? Because it's not relevant, because... Well, it's extremely relevant, and it was your duty to bring it to the attention of the district judge. Well, even if we failed in that duty, it's not... Let me explain one more time why I think it doesn't apply. You don't think you had an obligation to call that to the attention of the district judge? No one did. I don't think there's an obligation to cite to the court an opinion that's not relevant to the issue before it. The issue before the district court was, can we take collateral estoppel from disciplinary proceedings under a separate code section of the California Government Code? And there's no question that the district court could do that. In fact, Arbuckle is discussed in a case that was decided just two weeks after we filed our brief in this matter. It was discussed in Fallon v. Sutter Central Valley Hospitals. I don't have to give you the site, I hope. But what's interesting in that discussion is the California Supreme Court goes back to a decision before Arbuckle that would interpret this caveat that the only proceeding that doesn't have collateral estoppel effect is a whistleblower proceeding under Government Code section 19683. It discusses the California Supreme Court goes back historically to talk about these caveats and it discusses McCloskey v. Regents of the University of California, 2008. It's also under the whistleblower statute 8547. It's under the .10 instead of the .8. It has a subdivision, C, as do all the California whistleblower statutes. And back in 2008, a year before Arbuckle, the court concluded that because the caveat wasn't there and that caveat again fails to make findings pursuant to section 19683, that without that caveat, without that carve-out from the common law, the administrative proceedings in McCloskey had collateral estoppel and raised judicata effect. And that's what we have here. That's exactly our situation. We have a carve-out. By the way, two years later, the California legislature added a carve-out similar to what we have in Arbuckle. They added that there was no collateral estoppel effect if the findings were satisfactory to the employee. Again, that's similar to the carve-out, no collateral estoppel effect of findings pursuant to section 19583. In California, the legislature makes exceptions to the common law. The judiciary does not. And again, in this later case, in this Fallon case, the California Supreme Court reaffirmed that principle. That principle remains, that if you're going to carve-out collateral estoppel, you're going to do it with express verbiage by the legislature. The court is not going to do that. That's why after McCloskey, 8547.10 subsection C had to be amended to put a carve-out in. So here in Wabakan again, Wabakan didn't quit when he got his findings that have no preclusive effect. He went forward with a disciplinary proceeding. And he made another strategic decision when he did that. And what he did was he raised an affirmative defense of whistleblower retaliation. But it wasn't recognized. It was recognized. The ALJ wouldn't hear any evidence of it. That's untrue. How do you explain sustaining the objection when Mr. Anderson tried to introduce evidence? No. He tried to introduce a specific piece of evidence. He was asked, when you read the record, for an offer of proof. He made an offer of proof of its relevance to the affirmative defense. And the ALJ said, you know, that's not relevant to your affirmative defense. That's different. If you ask the wrong question and you get a relevance objection, you need to re-ask the question or try to introduce a different piece of evidence. So Wabakan makes this decision. Well, how do you explain the fact that there's no discussion whatsoever in the 49-page findings and conclusion? Two ways. One, we cited that Johnson case from the U.S. Supreme Court that came down again later. It came down just as we were orally arguing the matter. And in Johnson, the U.S. Supreme Court said that we're not going to impose opinion-writing standards on state courts. Well, but we don't have to find, Mr. Schreiber, that it was necessarily implicit in the ruling of the tribunal that the claim was considered and rejected. I can't make that conclusion based on the 49-page decision I read. Oh, but you can. And the reason you can is that the opinion applied to preponderance of the evidence standard and where the affirmative defense is raised and where there is enough evidence on it to show that there was whistleblower retaliation, the standard of proof that must be employed on the hiring authority, on CDCR, is clear and convincing evidence. Yeah, but where do I find in that decision any statement to that effect by the hearing officer that in essence the claimant didn't make out a prima facie case, he doesn't meet the burden of proof by preponderance, and therefore I'm ruling against him on that claim? It's not there. It's not there in that manner, but it's there in the evidence standard that was applied. If he had found in favor... What you are asking us to do is to simply assume without any reference to the affirmative defense that it was necessarily rejected when the thrust of the decision is favorable to the employee. Why shouldn't I assume just the opposite, that instead he found there was retaliation and therefore the only discipline he imposed was a 5% reduction in pay that he'd already served? Because the statute says under the subsection E of 8547.8 that if your assumption is correct that retaliation was shown, then it's a complete affirmative defense to all discipline. Well, the only charges that he sustained were the ones that the lieutenant acknowledged and apologized for and for which the discipline was imposed. But that's inconsistent with a complete affirmative defense. Think of the affirmative defense of statute of limitations. The defense was raised with regard to far more serious charges that would have resulted in sustaining his termination if the ALJ had been persuaded, but obviously the ALJ didn't believe in the strength of the state's case. Clearly it didn't in all factors. There's no question of that, but an affirmative defense... The only charges it sustained were the ones he admitted. But again, an affirmative defense says, so what? But why can't you have a case where there is part retaliation and part misconduct? That looks to me like what we have here. And if you have that, then two things. You have a clear and convincing standard in your opinion, which is not present here, and you have a complete affirmative defense to all of the discipline, admitted or not. I guess I don't buy that last conclusion. I don't see why it's inconsistent for the decision maker to say, I agree there was retaliation here with regard to 90% of the charges that were filed, but for these 10% that the employee admits I'm going to sustain the discipline, that doesn't seem inconsistent to me at all. I mean, juries do it all the time when they dismiss counts or claims in civil cases or criminal indictments. They do, but here I would ask the court to look at the wording of the statute. We have to go back to statutory construction, and the statute, subdivision E, says that where retaliation is proven by a preponderance, the burden is by clear and convincing evidence on the hiring authority, and it is a complete affirmative defense. Complete means just that, no discipline, no finding in favor of the hiring authority. And so when we look at that language, the employee shall have a complete affirmative defense in the adverse action. When we interpret that, we know that there was no finding of retaliation. But there doesn't have to be. I'm going back to Arbuckle, and I'm looking at Justice Kennard's opening paragraph where she quotes the statute and then says that the requirement is that the board must either issue or fail to issue findings. And here it seems to me we have a failure to issue findings. No, but read the next five words, pursuant to Section 19683, and she italicizes that. We don't have that in this case. What we have, what we relied on were findings in a separate disciplinary person. I keep repeating it. You repeat it, and you read these statutes. They're not clearly drafted. And we have this case, and the purpose of those hearings, in my thinking, is to see if they can't work out some settlement and keep these out of the courts. That is correct. If it doesn't happen, they work out a settlement. Then you go into the court system. That's the way I'm sure if you talk to the members of the state legislature that passed this, that's what they were thinking about. But who knows what they were thinking about. Well, we only know what they're thinking about by the words that they use. No, you really don't. You really don't. There's no such thing as a legislative intent. It's a fiction. So, look, you'll owe us six minutes and 20 seconds. Now, next time you come here, we'll have to take it off. We've got to keep our books balanced. Well, I'll see to that. I admire your persistence, your devotion. But anyway, let's leave it at that. We have 11 cases this morning. Lots of them. They're all waiting. They're all sharpening their knives back there. Well, if I could leave you with one thought, Justice Fragerson. Just a short thought. The short thought would be that I would really ask you to look at the wording in the statute of the C of the carve-out. Note that we didn't take collateral estoppel from the carve-out. We took it from a separate proceeding. I'd look at McCloskey one more time, and I would look at the plain language that it applies, and it says we only apply the carve-out as written by the legislature. If it's not there, we're not going to imply it. If you do that, I hope you'll change your views. And I thank you all. We'll give it a lot of thought. I appreciate it. Thank you. Okay, thanks. I don't think I'm going to beat a dead horse anymore. That's a good idea. We think the court gets our buckle, and we appreciate the court's consideration of these issues. My wife and I are expecting our first child, and if we had not already discussed names, our buckle might be up there from my standpoint. But anyway, I know it's Mother's Day weekend. Our buckle's a good name. It is, but it's not on the list, and I'd get in big trouble. My wife is Latina, and so we have picked out some Latino names. We had in the district court, and I think he may have been part of the Ninth Circuit staff, but we had the grandson of our buckle. Very nice person. Perhaps the second child, Your Honor. Thank you, Mr. Anderson. Just carve it out, that's all. Okay. This matter is submitted.
judges: Pregerson, Tallman, Nguyen